SO ORDERED.

SIGNED this 23rd day of October, 2015.



_____
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TONY RAY HUBBARD | ) | Case No. 15-50543 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER DENYING CONFIRMATION

This matter came before the Court on September 23, 2015, upon the Objection to Confirmation of Plan filed by the Chapter 13 Trustee (the "Trustee"). At the hearing, Wes Schollander appeared on behalf of Tony Hubbard (the "Debtor"), Kathryn Bringle appeared as the Trustee, and Robert Price appeared on behalf of the United States Bankruptcy Administrator. The Debtor testified on his own behalf, and Monica Dixon, the Debtor's ex-girlfriend, was also present and testified at the hearing. For the reasons set forth below, this Court concludes that the Trustee's objection should be sustained and confirmation should be denied.

## JURISDICTION

This Court has jurisdiction to decide this matter under 28 U.S.C. §§ 151, 157, 1334(b), and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding under 28 U.S.C. § 157(b) which this Court can hear and determine.

1

**BACKGROUND**

This case addresses whether a Chapter 20 debtor proposed his Chapter 13 plan in good faith when the plan includes a zero-percent dividend to his unsecured creditors, has a large amount of unsecured debt, and the debtor is ineligible for a discharge. In the present case, the Debtor is a general contractor who primarily performs home remodeling, including room expansions and additions, through his business, Legacy Building and Design, Inc. The Debtor's business has a total of five employees, including the Debtor. The Debtor personally guarantees every job over $30,000.

The Debtor has filed three bankruptcy petitions since 2011. The Debtor's first case was a Chapter 7, which he filed on December 7, 2011.[1] In his petition, the Debtor listed a total of $379,919 in general unsecured debt, $300,000 of which included personal guarantees related to one of the Debtor's former businesses, Legacy Builders and Development, Inc. The Debtor filed an amendment to his petition schedules which adjusted his unsecured debt upward to $460,933.40. The case was deemed a no-asset case, and the Debtor received a discharge on March 15, 2012. Less than two years later, on November 26, 2013, the Debtor filed a Chapter 13 petition. In his second case the Debtor listed unsecured debt of $292,870, later amended upward to $299,820, an overwhelming majority of which he classified as business debt. The Debtor's confirmed plan required monthly payments of $740 every month for sixty months and a five-percent dividend to the unsecured creditors. The case was dismissed roughly a year later on February 24, 2015, for failure to make plan payments. No payments were made to the Debtor's unsecured creditors during his second case.

---

[1] The Debtor filed a previous Chapter 13 in 1998, which was dismissed prior to confirmation upon the Debtor's request. The 1998 case is not pertinent to the matter before the Court.

The Debtor's third and present case was filed on May 28, 2015, three months after the dismissal of his second case. In this petition, the Debtor listed general unsecured debt of $307,211. Due to the Debtor's recent Chapter 7 discharge, this Court granted the Bankruptcy Administrator's motion to deny the Debtor a discharge in his Chapter 13 case pursuant to 11 U.S.C. § 1328(f)(1). The Debtor proposed a plan with monthly payments of $415 for thirty-six months and a zero percent dividend to general unsecured creditors. Aside from administrative costs, the plan would only pay federal and local taxes.[2] The Trustee objected to confirmation of the Debtor's plan, which was joined by the Bankruptcy Administrator, on the basis that it was not proposed in good faith pursuant to § 1325(a)(3).

## DISCUSSION

A Chapter 13 plan must be confirmed if, among other things, "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Although the Bankruptcy Code does not define good faith, a plan is not proposed in good faith if "under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan." *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (quoting 9 *Collier on Bankruptcy* ¶ 9.20, at 319 (14th ed. 1978)). In considering whether a plan was filed in good faith courts look to "the totality of circumstance," including a debtor's pre-petition conduct. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986) (quoting *Deans*, 692 F.2d at 972). The debtor has the burden of establishing by a preponderance of the evidence that his or her plan was filed in good faith. *In re Stanley*, 441 B.R. 37, 40 (Bankr. M.D.N.C. 2010).

A debtor who is ineligible for a discharge can still propose a plan in good faith. In *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272 (4th Cir. 2008), the Fourth Circuit

---

[2] The Debtor's plan proposed to reclassify the Internal Revenue Service's claim as secured for $10,010.00 and priority unsecured for $2,171.11. The Forsyth County Tax Collector filed a claim for vehicle taxes in the amount of $145.64. The Debtor has no other debts he is paying through the plan.

3

considered whether two separate Chapter 13 debtors could propose their plans in good faith given that their past bankruptcy filings made them ineligible for a discharge under § 1328(f). Both debtors filed for Chapter 13 to stop a pending foreclosure, and both proposed to pay the allowed claims in full. *Id.* at 275-76. The Fourth Circuit found that "the availability of a discharge is only one factor relevant in considering whether a plan was proposed in bad faith," because "in many Chapter 13 cases, it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'" *Id.* at 283. Absent the availability of a discharge, a debtor could file for Chapter 13 to "cure a mortgage, deal with other secured debts, or simply pay debts under a plan with the protection of the automatic stay." *Id.* (quoting 8 *Collier on Bankruptcy* ¶ 1328.06[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007).

Successive bankruptcy filings, colloquially referred to as Chapter 20 or Chapter 26 cases, invite closer scrutiny. While subsequent bankruptcy filings were sanctioned in *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991) ("Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief"), courts have recognized the unique good faith issues attending to these cases. *See T.D. Bank v. Davis (In re Davis)*, 716 F.3d 331, 338 (4th Cir. 2013) (cautioning that "bankruptcy courts are bound to carefully scrutinize filings for good faith and dismiss cases where the debtor attempts to use a Chapter 20 procedure solely to strip off a lien."). In *In re Chanthaleukay*, No. 09-11796C-13G, 2010 WL 55498, at *3 (Bankr. M.D.N.C. Jan. 7, 2010), the debtors filed a Chapter 13 case shortly after receiving a Chapter 7 discharge to cure an arrearage on their home but avoid paying any of their disposable income to their unsecured creditors. Due to the unique good faith

4

concerns that arise in a Chapter 20 case, the *Chanthaleukay* court considered the following factors:

> (1) the proximity in time of the Chapter 13 filing to the Chapter 7 filing; (2) whether the debtor has experienced some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a Chapter 13 plan; (3) whether the two filings accomplish a result that is not permitted in either chapter standing alone; and (4) whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*Id.* (citing *In re Cushman*, 217 B.R. 470, 476-47 (Bankr. E.D. Va. 1998)). Finding that all of the factors supported denying confirmation, the court noted that "[c]onfirmation of the proposed plan would allow the Debtors to manipulate the system so as to obtain the benefits of Chapter 13 while retaining substantial disposable income that should be paid to unsecured creditors." *Id.* at *4.

Applying these factors to the present case, the first three factors seem to be in the Debtor's favor. The proximity in time between the Debtor's Chapter 7 case and his current Chapter 13 case is approximately three and a half years, although this period is distorted by the Debtor's first Chapter 13 filing. The Debtor did experience a significant change in circumstances after his Chapter 7 case—the accumulation of nearly $300,000 in unsecured debt—but the rapidity with which he amassed this debt hardly weighs in his favor. Lastly, the Debtor is not proposing to utilize his bankruptcy filings to achieve something that cannot be completed in either chapter.

Notwithstanding the first three factors, this Court concludes that the Debtor's proposed plan represents an attempt to manipulate the bankruptcy system in order to obtain the benefits of the automatic stay. Courts have found that debtors who are ineligible for a discharge may seek other benefits of Chapter 13 such as curing a mortgage arrearage, *Bateman*, 515 F.3d at 283, or

preventing a foreclosure, *In re Frazier*, 448 B.R. 803, 813 (Bankr. E.D. Cal. 2011). In contrast, the Debtor filed this case not to protect any real property but instead to stop the collection activity of his subcontractor creditors. It is true that debtors "utilize the tools in chapter 13 to…pay debts under a plan with the protection of the automatic stay," *Bateman*, 515 F.3d at 283, but the current plan's predominant achievement, if confirmed, would be to stall his unsecured creditors for at least three years, and possibly up to five years, while they receive no payments. Despite the fact that zero-percent plans are routinely confirmed, this Court is rarely presented with a case in which it must examine "whether the debtor came into bankruptcy court seeking a fresh start under Chapter 13 protection with an intention that is consistent with the spirit and purpose of that law—rehabilitation through debt repayment—or with an intent contrary to its purposes—debt avoidance through manipulation of the Code." *In re McGovern*, 297 B.R. 650, 660 (Bankr. S.D. Fla. 2003). The Debtor's plan demonstrates his intent to avoid his debt obligations through manipulating the bankruptcy system, not an earnest effort to seek a fresh start.

      The Debtor's manipulation of the bankruptcy system is magnified after considering the nature of his income. As the owner of a business, the Debtor is the sole person responsible for determining his income. The Debtor decided to fix his income in such a way as to only satisfy his expenses, including his anticipated Chapter 13 plan payments. By basing his income exclusively on his expenses, the Debtor controlled the extent to which he has disposable income to pay his unsecured creditors. In *Chanthaleukay*, the court was presented with an issue in which the debtors had disposable income but no unsecured creditors due to their previous Chapter 7 case. In contrast, the Debtor has unsecured creditors but purportedly no disposable income to pay them through the plan. Although the *Chanthaleukay* case and the present one are different in

6

this respect, they are similar in that both debtors manipulated a situation in which the unsecured creditors would not be paid through a Chapter 13 plan.  While it may be true that the Debtor does not always receive his full monthly salary due to downturns in his business, the mere fact that he structured his salary to not include any disposable income signals an intention inconsistent with the spirit and purpose of Chapter 13.

Furthermore, the Debtor does not propose to treat his unsecured creditors fairly.  *See Stanley*, 441 B.R. at 41 ("[T]he focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors.") (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).  After the Debtor received his Chapter 7 discharge, he quickly accumulated nearly $300,000 in unsecured debt in a span of less than two years.  His unsecured creditors were prevented from exercising their state law rights for a year and a half while his first Chapter 13 case was pending, during which time they received no payments.  Under his current proposed plan the Debtor will delay payments even further until after his three (or potentially five) year plan is finished, resulting in the Debtor postponing any payment to his unsecured creditors for up to six and a half years.  Although a delay in payment is often a part of the Chapter 13 process, *see In re Lewis*, 339 B.R. 814, 817 (Bankr. S.D. Ga. 2006) ("Unsecured creditors have a better chance and more cost-efficient opportunity to be paid in a chapter 13 plan under court supervision than contemplated under available state debt-collection law"), the Debtor's plan unreasonably delays his creditors and treats them in a fundamentally unfair manner.

## Conclusion

Based on the foregoing, the Court concludes that the objection by the Trustee is sustained and confirmation is DENIED. It is further ordered that the Debtor will have a period of thirty days (30) from the entry of this Order to file a new plan with the Court.

IT IS SO ORDERED.

END OF DOCUMENT

# SERVICE LIST

ALL PARTIES OF RECORD AS OF THE DATE OF THE ORDER SHALL BE SERVED BY THE BANKRUPTCY NOTICING CENTER